448 So.2d 856 (1984)
Paul GULLETTE, Plaintiff-Appellee,
v.
Joe WOODS, Defendant-Appellant.
No. 16136-CA.
Court of Appeal of Louisiana, Second Circuit.
March 26, 1984.
Harvey R. Lexing, Monroe, for defendant-appellant.
Joe D. Guerriero, Monroe, for plaintiff-appellee.
Before MARVIN, JASPER E. JONES and SEXTON, JJ.
SEXTON, Judge.
The defendant appeals a judgment in favor of the plaintiff in the amount of $4,500.00, representing a sum which the plaintiff paid defendant for several bars of a metal thought to be gold. These bars were actually brass. We affirm.
The facts of the cause were well summarized in the trial court's reasons for judgment as follows:
"The evidence at trial recounted a bizarre series of events, with grossly conflicting assertions by all witnesses. A friend of plaintiff testified he was stopped by defendant and asked if he could find a buyer for some gold. He contacted plaintiff, who was interested. This witness said defendant told him the price was $6,000 for `about 100 ounces,' and that he repeated this information to plaintiff. He later accompanied plaintiff to defendant's place, where they looked at the metal, which was bar-shaped in three pieces. He said defendant recounted a previous sale of a piece of the `gold' to someone in Vicksburg, and he denied defendant ever said anything about brass. He was to get a `commission' of $200 from each party, but never got any money from eithernot from defendant, who said the selling price was too low, and not from plaintiff because the stuff was virtually worthless.
"Plaintiff's testimony as to the contact and conversations with defendant was similar to that of his friend. However, he testified he took the metal to a jeweler friend who tested it with acid and told him it was 6 to 8 carat gold. He then declined the $6,000 price but offered to pay $4,500 for what he told defendant was 6-carat gold. The offer was accepted. Plaintiff thought he could get $5,500 in a re-sale. He said he later took the metal elsewhere for assay and found it to be only brass. He denied defendant ever told him it was brass, and emphasized the alleged representations of a previous sale in Vicksburg to one who had `checked' it and found it to be gold.
*857 "Plaintiff's jeweler testified that he put acid on the metal in plaintiff's presence but it did not react uniformally or in a manner he could recognize. He could not evaluate the test but thought it might be low-carat gold. He called a friend in Texas who allegedly was expert, described the metal and the reaction to the acid, and was told his friend had seen such metal and it was 6 to 8 carat gold. He transmitted this information to plaintiff.
"Defendant testified that his cousin called him from Houston and asked him to find buyers for some gold to be brought here. He contacted one friend as an intermediary; and when the cousin and the cousin's brother-in-law arrived with the metal, a $2300 sale was made to an unidentified person through the intermediary. He claimed he was stopped by plaintiff's friend a day or so later, and he denied giving a price for the metal. He also swore that by the time plaintiff and his friend contacted him several days later, he had learned the metal was brass and so told plaintiff in the presence of his cousin and plaintiff's friend. However, he quoted plaintiff as saying he was familiar with brass and knew the metal was not brass. At plaintiff's insistence, he accompanied plaintiff to the jeweler mentioned earlier and waited outside while the test was run. He said plaintiff told him it was 6-carat gold and he would contact defendant later.
"Defendant said plaintiff did call the next day to offer $4,500. He asked his cousin, the alleged owner, who accepted the offer. According to defendant, plaintiff then came to his home and, in the presence of the cousin, counted out the money in twenty and one-hundred dollar bills, then saw the cousin pick up the money and give defendant $2,000 of it. He quoted plaintiff as saying: `This deal is over. I don't know you, and you don't know me.'
"Defendant further testified the intermediary on the first sale later informed him that the metal was brass and that the buyer was threatening to report the incident to the police, so he called his cousin and a refund of the $2,300 was made. He claimed to have told plaintiff about this but said plaintiff was relying on his own jeweler's information and rejected the information. He did, however, admit that he had offered to give plaintiff what he had left of his $2,000 when plaintiff later reported the assay results.
"Defendant's wife said she knew nothing about the transaction except that plaintiff came to the store where she worked to look at the metal. She described a test by a local scrap dealer at the store, who said the metal was brass; and she and her husband considered it brass (defendant had also referred to this test).
"Defendant's cousin testified he found the metal in a public dump near Houston, in a paper sack, and showed it to his brother-in-law. The latter allegedly took it to a knowledgeable friend who said it was gold, and the brother-in-law suggested it be brought to Monroe for sale. He agreed with most of defendant's testimony as to the transaction with plaintiff.
"No other witnesses testified, and several key persons referred to by one or more witnesses were never identified. At the beginning of the trial, however, the parties stipulated that the metal was not gold."
The trial court noted that some of the conflicts in the testimony could not be resolved. However, the court determined that it was inconceivable that the plaintiff would have maintained an interest in the transaction had the defendant indeed told the plaintiff, as the defendant asserted in his testimony, that the metal was brass. The trial court further noted that plaintiff's contention that he relied on the defendant's assertions was obviously not true because the plaintiff in fact took the metal to a jeweler in whom the plaintiff apparently had confidence and accepted that jeweler's assurances. Furthermore, the plaintiff made repeated contacts for resale and did not tell the defendant the whole story of the amount of gold content which was reported to the plaintiff by the jeweler.
Additionally, the trial court rejected defendant's contention that he was an innocent *858 intermediary for the alleged owner, defendant's cousin. The trial court also specifically rejected defendant's claim that he made repeated assertions to plaintiff disclaiming the nature of the content of the metal. The trial court found that "the whole group was composed of individuals seeking a `fast buck' with very loose yet guarded activities."
These findings of the trial court are supported by the record and are therefore not manifestly erroneous. They are thus not to be disturbed on appeal. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978).
Based on these findings of fact, the trial court determined that LSA-C.C. Art. 1843,[1] was directly on point. This article provides that there is an error as to substance where the object of the contract is "of a totally different nature from that which [was] intended." The trial court correctly concluded, under Art. 1843, that there was an error as to substance. Moreover, Civil Code Art. 1842[2] clearly indicates that an error as to the substance of a thing invalidates a contract. We therefore conclude that the trial court correctly found, under Art. 1842, that there was an error as to substance, and correctly ruled, under Art. 1843, that the contract was thereby invalidated. The judgment of the trial court is accordingly affirmed at appellant's cost.
AFFIRMED.
NOTES
[1] LSA-C.C. Art. 1843 reads:

"There is error as to the substance, when the object is of a totally different nature from that which is intended. Thus, if the object of the stipulation be supposed by one or both the parties to be an ingot of silver, and it really is a mass of some other metal that resembles silver, there is an error bearing on the substance of the object."
[2] LSA-C.C. Art. 1842 reads:

"Error as to the thing, which is the subject of the contract, does not invalidate it, unless it bears on the substance or some substantial quality of the thing."